[Cite as *Okoye v. Okoye*, 2018-Ohio-74.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

BRIDGET I. OKOYE

     Appellee

     v.

IKE J. OKOYE

     Appellant

C.A. No.     28183

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2013-09-2546

DECISION AND JOURNAL ENTRY

Dated: January 10, 2018

TEODOSIO, Judge.

{¶1}    Ike J. Okoye appeals the decree of divorce entered by the Summit County Court of Common Pleas Domestic Relations Division on March 2, 2016. We affirm.

I.

{¶2}    Mr. Okoye and Bridget I. Okoye were married in 2001 and adopted two Nigerian children together in 2008. At that time, the parties did not report any marital discord. However, in 2011, Mr. Okoye was alleged to have pushed Ms. Okoye to the ground, resulting in injury to her and his arrest for domestic violence. Mr. Okoye contends she fell of her own accord. Ms. Okoye subsequently asked to withdraw her complaint and the case was dismissed after the couple attended counselling sessions. Despite the dismissal of the case, Ms. Okoye continued to maintain that she was pushed by Mr. Okoye.

{¶3}    In 2013, the Okoyes began to have issues with regard to the discipline of their children, with each side accusing the other of inappropriate behavior. This led to Mr. Okoye

installing motion-sensing cameras around the house. On August 8, 2013, an incident was recorded where the children had been fighting, and in response, Ms. Okoye spanked one of the children with a wooden spoon while the other child jumped on her back, presumably in an attempt to stop her. Mr. Okoye filed a civil protection order on August 22, 2013, resulting in Ms. Okoye being removed from the marital residence.

{¶4} Ms. Okoye filed for a divorce in September 2013, and a temporary order was entered setting forth supervised parenting time for Ms. Okoye. When this arrangement proved to be unsuccessful, an emergency hearing before a magistrate took place in January 2014, with the court ordering supervised parenting time for Ms. Okoye. These visits took place at a Chuck E. Cheese restaurant, but were eventually discontinued after the children became unwilling to participate. In September 2014, by an agreed order, the parties were referred to Minority Behavioral Health Group for family counseling.

{¶5} The matter came before the trial court for trial in March and June of 2015, with the trial court entering a decree of divorce on March 2, 2016. In pertinent part, the entry allocated sole parental rights and responsibilities of the minor children to Ms. Okoye and granted supervised visitation with Mr. Okoye once a week for two hours. The trial court also ordered Mr. Okoye to pay spousal support in the amount of $1,254.00 per month for a period of 37 consecutive months, effective March 9, 2016.

{¶6} The trial court further addressed the issue of financial misconduct by Mr. Okoye, finding that he had transferred nearly all of his 401(K) account balance to an Ameriprise account. Mr. Okoye failed to list the account as property as required at the initiation of the divorce case and made withdrawals from the account in violation a restraining order entered by the trial court. Mr. Okoye contended the money in the account belonged to a Nigerian organization called

ADTU as payment for a debt he owed to the organization. Mr. Okoye alleges he acquired a loan from ADTU in order to pay for Ms. Okoye's medical issues and for adoption expenses. In the decree of divorce, the trial court found the balance of Mr. Okoye's Ameriprise account to be marital property and further found that the funds owed to ADTU were not proven to be a marital debt. Mr. Okoye now appeals, raising four assignments of error.

II.

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN ALLOCATING SOLE PARENTAL RIGHTS AND RESPONSIBILITIES TO PLAINTIFF MOTHER CONTRARY TO THE EVIDENCE AND THE PROVISIONS OF [R.C.] 3109.04.

{¶7} Mr. Okoye argues the trial court's decision to allocate parental rights and responsibilities primarily to Ms. Okoye was against the weight of the evidence and that a careful weighing of the factors provided for by R.C. 3109.04(F)(1) favored a determination that allocation of parental rights and responsibilities primarily to Mr. Okoye would have been in the best interest of the children. We disagree.

{¶8} "When allocating parental rights and responsibilities, the court must take into account the best interest of the children." *Bentley v. Rojas*, 9th Dist. Lorain No. 10CA009776, 2010–Ohio–6243, ¶ 19, citing R.C. 3109.04(B)(1). In determining the best interest of the children for purposes of allocating parental rights and responsibilities, a court must consider the factors listed in R.C. 3109.04(F)(1). *Patton v. Hickling–Patton*, 9th Dist. Medina No. 13CA0071–M, 2014–Ohio–2862, ¶ 8. Those factors include: (1) the wishes of the children's parents; (2) the wishes of the children, if the court interviews the children; (3) the children's interaction and interrelationship with their parents, siblings, and anyone else who may significantly affect their best interest; (4) the children's adjustment to home, school, and

community; (5) the mental and physical health of all persons involved; (6) the parent more likely to honor and facilitate court-approved parenting time rights; (7) whether either parent has failed to make child support payments; (8) whether either parent or any household member previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; (9) whether one of the parents has continuously and willfully denied the other's right to parenting time; and (10) whether either parent has established a residence, or is planning to establish a residence, outside Ohio. R.C. 3109.04(F)(1)(a)-(j).

{¶9} "A trial court possesses broad discretion with respect to its determination of the allocation of parental rights and responsibilities, and its decision will not be overturned absent an abuse of discretion." *Kokoski v. Kokoski*, 9th Dist. Lorain No. 12CA010202, 2013–Ohio–3567, ¶ 26. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶10} Although we recognize the concerns expressed in the separate concurring opinion, this Court is required to apply the following standards of review. "[A]bsent an argument that the trial court reached an incorrect factual determination on one or more of the best interest prongs, this Court will review a trial court's best interest analysis under an abuse of discretion standard of review." *Walsh–Stewart v. Stewart*, 9th Dist. Wayne No. 12CA0031, 2012–Ohio–5927, ¶ 20. While a trial court's decision regarding allocation of parental rights will not be overturned absent an abuse of discretion, an appellate court reviews the trial court's factual findings under a

manifest weight of the evidence standard. *See Wallace v. Wallace*, 195 Ohio App.3d 314, 2011–Ohio–4487, ¶ 10 (9th Dist.). "[B]efore an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice. Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002–Ohio–2320, ¶ 10. Manifest weight of the evidence pertains to the burden of persuasion. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, ¶ 19. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶11} We will consider each of the factors provided under R.C. 3109.04(F)(1) below.

{¶12} **The wishes of the children's parents.** Both Mr. Okoye and Ms. Okoye wished to be named the sole residential parent. Ms. Okoye requested that visitation with Mr. Okoye be supervised. Mr. Okoye requested visitation with Ms. Okoye take place only "once [the children] feel comfortable * * *."

{¶13} **The wishes of the children.** Upon being interviewed by the trial court, the children requested to remain in the sole custody of Mr. Okoye.

{¶14} **The children's interaction and interrelationship with their parents, siblings, and anyone else who may significantly affect their best interest.** The trial court found that both parents had a close relationship to the children prior to the divorce action. Ms. Okoye testified that the children had contact with her mother and sister, but no relationship with Mr. Okoye's relatives. The trial court found that Ms. Okoye had minimal contact with the children since the divorce action had been pending despite numerous attempts by the court to establish

regular parenting time. The trial court noted the children had seen Ms. Okoye a total of fifteen times from August 22, 2013, through June 17, 2015, and that during those visits they had called their mother an "abuser" and confronted her about having Mr. Okoye arrested for domestic violence. In an interview conducted by the trial court, one of the children stated his father had not pushed his mother down, but that she had tripped over his brother. The children also reported being hit with a wooden spoon "particularly when they were doing something good" or for no reason at all. One child said his brother was hit with a frying pan, which the other brother denied, saying his mother had only threatened to do so. The children also reported their mother never wanted them, had wanted to kill them, and had poisoned their father.

{¶15} The trial court further found that one child reported that when he visited with Ms. Okoye at a Chuck E. Cheese restaurant, he did not want to be with her, did not want to play games with her, did not hug her, and did not draw a picture for her. These statements were contrary to what was reported by the social worker who supervised the visit. The children told the guardian ad litem that they did not wish to see their "so-called Mommy," a term they did not use when they first began to meet with the guardian. With regard to the children's relationship with Mr. Okoye, the guardian ad litem reported "a close and loving relationship * * *." The trial court found "that [Mr. Okoye] had a substantial ongoing negative influence on the children's perception of their mother since they [had] been in his exclusive care."

{¶16} Mr. Okoye contends that the children "consistently expressed their mistrust and fear of [Ms. Okoye] throughout the entire process." Specifically, Mr. Okoye points to the incident when Ms. Okoye spanked one of the children with a wooden spoon while the other child attempted to stop her. Mr. Okoye also points to the children's resistance to visiting with Ms.

Okoye. He argues that "while the trial court squarely blames [his] behavior * * * [there was] little significant evidence that [he] was influencing this reaction."

{¶17} **The children's adjustment to home, school, and community.** The children are reportedly well-adjusted to school, and no concerns were raised as to their adjustment.

{¶18} **The mental and physical health of all persons involved.** Mr. Okoye contends the trial court erred in questioning his mental health because the evidence does not support such a conclusion. Because Mr. Okoye thus argues the trial court reached an incorrect factual determination on this issue, we review the trial court's factual findings under a manifest weight of the evidence standard.

{¶19} With regard to the issue of mental health, the guardian ad litem reported: "I am concerned about mental health issues as to both parties." Specifically, it was noted that Ms. Okoye lacked insight as to how her actions impacted her children. With regard to Mr. Okoye, she wrote:

> [Mr. Okoye] is almost pathologically committed to sabotaging the boys' relationship with their [m]other. I believe that various authorities let the boys down when the initial wooden spoon video was presented, together with other issues. However, even if the Children Services Board had taken the children from [Ms. Okoye] and had given them to [Mr. Okoye], [Ms. Okoye] would have been visiting the children regularly for well over a year at this point. Likely they would have been visiting unsupervised by now. Father has thwarted any progress in this regard and I fear that this is a mental health issue in itself.

The Family Court Services Evaluator reported that there had "not been any mental health issues reported * * * regarding [Ms. Okoye] or [Mr. Okoye]." She went on to note her concern regarding Mr. Okoye's "ongoing and willful stonewalling of [Ms. Okoye]'s relationship with the children even though it has not been evaluated professionally."

{¶20} The trial court stated it "believes that each party has some mental health issues that are concerning to the court." With regard to Ms. Okoye, the Court found there to be

occasions that displayed a lack of empathy and awareness for her children's feelings, but noted that she had "taken numerous steps to improve her parenting ability" and had "seriously worked to become a better parent." With regard to Mr. Okoye, the trial court stated that it had "concerns * * * about [Mr. Okoye]'s thought processes and what he shares with the children." The trial court pointed to Mr. Okoye's testimony that he feared his wife and mother-in-law were attempting to poison him, finding this testimony "not credible." The trial court further stated:

> The fact that [Mr. Okoye] has concocted this "poisoning theory" and shared it with the children causes the court to question his overall mental health. The court also agrees with the guardian ad litem's statement that "Father is almost pathologically committed to sabotaging the boys' relationship with their Mother." The evidence presented at trial certainly supports this statement.

{¶21} Mr. Okoye contends that "[t]he trial court questioned [his] mental health, but the evidence [did] not support this conclusion." We note the trial court makes no concrete determinations or diagnoses regarding Mr. Okoye or Ms. Okoye's mental health; rather, it expresses its concern for issues and behaviors that may fairly be considered as falling under the category of mental health. The evidence as recited above supports this expression of concern. We conclude the trial court did not clearly lose its way or create a manifest miscarriage of justice in its factual determinations as to this factor.

{¶22} **The parent more likely to honor and facilitate court-approved parenting time rights.** Mr. Okoye disputes the trial court's findings that Ms. Okoye was "significantly more likely to honor and facilitate parenting time" and that Mr. Okoye would "obstruct either directly by himself or passively through the children any parenting time between [Ms. Okoye] and [the] children." He argues that these findings are inconsistent with the evidence. Once again, because Mr. Okoye argues the trial court reached an incorrect factual determination, we review the trial court's factual findings under a "manifest weight of the evidence" standard.

{¶23} In her report, the guardian ad litem stated that with regard to honoring and facilitating court-approved parenting time, Ms. Okoye was "somewhat more preferable[.]" The Family Court Services Evaluator reported:

> Again, the evidence reveals that [Mr. Okoye] has consistently failed to facilitate [Ms. Okoye]'s relationship despite court orders speaking to the contrary. He has continually thwarted any positive and healthy relationship in any setting including supervised and therapeutic visitation with a counseling professional. [Mr. Okoye] indirectly through his actions indicates that he is going to do things his way, and his way only, and as a result he has been successful at blocking [Ms. Okoye]'s ability to have any meaningful contact with the children for nearly one full year at this point.

With regard to the mother, she reported that Ms. Okoye had not "demonstrated any harsh or disparaging behavior toward [Mr. Okoye] that would give rise to any concern that she would interfere with [his] relationship with the children." The trial court found that Ms. Okoye is "significantly more likely to honor and facilitate parenting time" and that Mr. Okoye would "obstruct either directly by himself or passively through the children any parenting time between [Ms. Okoye] and [the] children." (Emphasis sic.)

{¶24} A therapist working for Minority Behavioral Health Group testified that he did not directly know of any specific "previous resistance" by Mr. Okoye regarding contact between the children and Ms. Okoye. He testified that Mr. Okoye had missed approximately five scheduled appointments with the children. The therapist went on to testify that "a lot of things are postulated as it relates to Mr. Okoye possibly forcing the children not to participate, and, that, I can't speak on directly. I can say that his parental authority, I believe, could be exercised more readily in spite of the children's potential or alleged discomfort * * *." When asked for his professional opinion, the therapist testified the children "do appear to have some level of – coercion as it relates to their ideas about their mother * * *." The therapist also noted the children's resistance to attending sessions with him and stated that although Mr. Okoye "did

encourage the boys to participate consistently, * * * in their refusal [he] had a sense * * * that they were somehow coerced not to participate."

{¶25} The visitation supervisor testified that at the first visitation session with the children, "[t]hey were reluctant to come in[, and Mr. Okoye] was very good at encouraging them, reassuring them, really helping me to get them in to that first visit. Again he was very accommodating." The visitation supervisor noted that Mr. Okoye encouraged the children at other visits as well, and the children took part in those visits. During the tenth visit, however, one of the children would not enter the restaurant and remained in the car with Mr. Okoye. The visitation supervisor testified: "[T]he father had been very helpful up until this point. And once the father was not taking on the role of being helpful to facilitate the visits I think [the child] felt that and it encouraged him to not attend * * *." She testified that "[a]t that point the father either was unable or unwilling to bring the child [into the restaurant]. She further testified that once Mr. Okoye "was no longer taking an active role then I believe [the child] sensed that and that's why he never visited again."

{¶26} At the next scheduled visit, the children again refused to enter the restaurant and would not exit the car. The visitation supervisor testified that Mr. Okoye "asked me to tell the [c]ourt the boys do not want to visit" and that "the court needs to do something about the situation." At that point Mr. Okoye "stated his wife is an abuser" and the visitation supervisor "terminated the conversation as it was not appropriate for the boys to hear * * *." The supervisor stated the children did not appear angry or upset and she believed that they realized Mr. Okoye's request for them to enter the restaurant was "perhaps a half-hearted directive."

{¶27} At subsequent visits, the children refused to participate, with one child answering for both children when asked to come into the restaurant. The visitation supervisor testified that

Mr. Okoye continued to bring both children to the visitations, even though he had been advised to only bring the child who was less resistant.  She also testified that Mr. Okoye did "nothing to quiet" the child who was "protest[ing] on behalf of his brother."

{¶28}  Although there is testimony to support the theory that Mr. Okoye had been accommodating at certain times in encouraging visitation, there is substantial evidence, provided by the same witnesses, suggesting that Mr. Okoye failed to facilitate, and even obstructed, visitation of the children with Ms. Okoye.  We conclude the trial court did not clearly lose its way or create a manifest miscarriage of justice in its factual determinations as to the parent more likely to honor and facilitate court-approved parenting time rights.

{¶29}  **Whether either parent had failed to make child support payments.**  No child support was ordered.

{¶30}  **Whether either parent or any household member previously had been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child.**  Mr. Okoye was found guilty of intentional physical abuse-child, a second degree felony, in 1992, and was placed on two years' probation. The case did not involve the children at issue in the present case.

{¶31}  With regard to Ms. Okoye, the guardian ad litem reported:

> While it appears that the children have suffered from some abusive conduct by [Ms. Okoye], this is not the same as a child being determined to be an abused child.  The boys expressed that [their m]other gave [one of them] urine to drink. Their physician had seen marks of razor scars.  He did not opine that this was abuse *per se*, but it is concerning.  There is videotape of [Ms. Okoye] completely out of control, although not inflicting significant physical harm.  Nonetheless, the children remain significantly frightened of her lack of control.

The videotape in question shows Ms. Okoye spanking one of the children with a wooden spoon, with the other child jumping on her back.  There was also evidence that Ms. Okoye had pinched

the children as a form of discipline. We note there had been speculation that the scarring may have been a cultural custom, and the trial judge found that the drinking of urine was an attempt to administer some type of folk remedy. Ms. Okoye met with a counselor from Minority Behavioral Health Group on twenty occasions in order to discuss culturally based differences between parenting in Nigeria as opposed to the United States. Ms. Okoye agreed she would make the necessary adjustments as to the use of corporal punishment and other forms of discipline.

**{¶32} Whether one of the parents had continuously and willfully denied the other's right to parenting time.** Mr. Okoye maintains "[t]here is no evidence of him ever preventing the children from participating" in visitation with Ms. Okoye. In addition, he argues that "most supervisors found him to be encouraging of the visit until such time as the children became increasingly resistant." Once again, because Mr. Okoye argues the trial court reached an incorrect factual determination, we review the trial court's factual findings under a manifest weight of the evidence standard.

**{¶33}** The guardian ad litem reported:

At this point it appears that [Mr. Okoye]'s denial of parenting time is willful and it certainly has been continuous. He has not been cooperative in attempting to reestablish the boys' relationship with their [m]other. I supported his initial concern. However, the children will see her eventually and it would be better for the children to have a good re-involvement rather than a bad one.

The Family Court Services Evaluator reported:

This evaluator * * * continues to remain concerned by what seems to be [Mr. Okoye]'s ongoing and continuous willful efforts to thwart [Ms. Okoye]'s ability to repair and reestablish her relationship with the children. This evaluator has had an opportunity to view a video tape that seems to hinge together [Mr. Okoye]'s position to stonewall [Ms. Okoye]'s ability to be involved with the children, and while it was inappropriate discipline, it did not rise to the level based on this evaluator's professional experience to warrant [Mr. Okoye]'s apparent willful

behavior. This evaluator is concerned that this video was contrived as a means to an end by [Mr. Okoye].

{¶34} The trial court found that Mr. Okoye obstructed parenting time between Ms. Okoye and the children throughout the pendency of the case. The trial court also found that Mr. Okoye's "abuse narrative continues to grow since the initial incident on August 8, 2013. The children now report that [their mother] wants to kill them, that [she] poisoned their father and that she is their 'so called' mother." The trial court further found "that if it does not significantly intervene [Ms. Okoye] will never see the children again nor have a relationship with them until after they emancipate."

{¶35} Although there was witness testimony to support Mr. Okoye's contention that he was initially accommodating as to the children's visitation with Ms. Okoye, the same witnesses also testified that Mr. Okoye became coercive and obstructive with regard to the children's relationship with their mother. We conclude the trial court did not clearly lose its way or create a manifest miscarriage of justice in its factual determinations as to whether one of the parents had continuously and willfully denied the other's right to parenting time.

{¶36} **Whether either parent has established a residence, or is planning to establish a residence, outside Ohio.** Neither Mr. Okoye nor Ms. Okoye indicated an intention to move out of state.

{¶37} Having reviewed the trial court's factual determinations questioned by Mr. Okoye, and having concluded the trial court did not clearly lose its way or create a manifest miscarriage of justice in those determinations, we turn now to the trial court's consideration of the factors listed under R.C. 3109.04(F)(1) in determining the best interest of the children for the purposes of allocating parental rights and responsibilities. As noted above, the trial court possesses broad discretion with respect to its determination, and we review the allocation of

parental rights and responsibilities for an abuse of discretion. The trial court engaged in a discussion of all relevant factors, giving particular attention to the children's interactions with their mother during the supervised visitations. Of particular concern to the trial court was testimony that Mr. Okoye was engaging in obstructive and coercive behavior with regard to Ms. Okoye's relationship with the children. There was testimony that he willfully and continuously denied parenting time, thereby preventing meaningful contact and blocking any progress towards a positive and healthy relationship. There is also evidence he was disparaging of Ms. Okoye in front of the children and negatively influenced their relationship with their mother.

{¶38} The factors are clearly not devoid of concern with regard to Ms. Okoye's parenting abilities, including evidence of her use of inappropriate corporal punishment on the children. The trial court noted that Ms. Okoye "appear[ed] to be focused on becoming a better parent" by "participat[ing] in individual counseling, parenting classes and domestic violence classes * * *." Specifically, the trial court's journal entry provides:

> [Ms. Okoye] has however taken numerous steps to improve her parenting ability. She saw a psychiatrist at the University of Akron for three months. She took the Stop the Cycle Program at the Battered Women's Shelter in October 2014. She started weekly counseling sessions with Curtis Williams, LSW[,] commencing October 2014. She took parenting classes at Greenleaf Family Center for eight weeks. She completed this program on March 3, 2015. The court finds that [Ms. Okoye] has seriously worked to become a better parent.

Although there is evidence that the children had developed a fear and mistrust of their mother, there was substantial evidence of Mr. Okoye's influence on the relationship. And although Mr. Okoye testified that Ms. Okoye had attempted to poison him, the trial court did not find the testimony to be credible.

{¶39} Having considered the factors listed under R.C. 3109.04(F)(1), we conclude the trial court's decision to allocate parental rights and responsibilities primarily to Ms. Okoye was

not unreasonable, arbitrary, or unconscionable. The trial court therefore did not abuse its discretion.

{¶40} Mr. Okoye's first assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

ALTERNATIVELY, THE TRIAL COURT ERRED IN GRANTING ONLY SUPERVISED VISITATION TO DEFENDANT FATHER CONTRARY TO THE EVIDENCE AND THE PROVISIONS OF [R.C.] 3109.04.

{¶41} In his second assignment of error, Mr. Okoye argues the trial court erred in granting only supervised visitation to him, and contends that decision is contrary to the evidence and the provisions of R.C. 3109.04. We disagree.

{¶42} "The standard of review for matters concerning * * * visitation rights is whether an 'abuse of discretion' was committed." *Shannon v. Shannon*, 122 Ohio App.3d 346, 350 (9th Dist.1997). An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶43} In its decree of divorce, the trial court found that based upon all of the evidence presented: "Allocation of sole parental rights and responsibilities of the minor children to [Ms. Okoye] is in the best interest of the children. * * * [Mr. Okoye] is granted supervised visitation * * * one time per week on the weekend for two hours commencing April 6, 2016. This parenting time is presently in the best interest of the children."

{¶44} The trial court noted the recommendations of the guardian ad litem and the family court services evaluator as set forth below.

The guardian ad litem recommended as follows, to wit:

a. I recommend that this Court refer this case to Juvenile Court based on Father's medical neglect and Mother's abusive conduct.
b. I recommend that the children could be placed in an appropriate foster setting, where the children can be regularly engaged in counseling to reinstate their relationship with Mother.
c. I recommend that Father and Mother have supervised parenting time so that Father cannot undue the progress the children will make with their therapist and Mother will be subject to correction for her lack of insight into the children's feelings.
d. I recommend that child support be direct to Children Services Board for support of children.

Alissa Endicott, the Family Court Services Evaluator, recommended as follows, to wit:

a. This evaluator recommends that Mother be immediately designated the legal custodian and residential parent of the children. Father shall exercise supervised visitation at Common Ground after at least 30 Days of no contact with the children once custody is granted to Mother.
b. Mother shall remain in counseling at Minority Behavioral Health, and follow through with all recommendations, until Mr. Williams initiates the subject of termination.
c. Mother should complete parenting classes at Greenleaf.
d. Father shall engage in individual counseling and follow though [with] all recommendations of the counselor and should also initiate involvement in parenting classes.

{¶45} Mr. Okoye contends that because the wishes of the minor children to stay with their father "were in contradiction" with the recommendation of the guardian ad litem, there should have been an appointment of counsel for the children. Mr. Okoye further contends that because the children's relationship with him was "strong," to "sever that relationship so abruptly and to limit the contact between the children and their father so severely was extreme as to constitute an abuse of discretion."

{¶46} Mr. Okoye states that the only rationale the trial court relied upon in support of its restrictive limitation on visitation was its finding that he was uncooperative in the visitation process. He further contends there were far less restrictive alternatives that could have

adequately addressed the trial court's concerns, and that the restriction is a "punitive reaction" based upon "the perspective that [he] had orchestrated the failure of [Ms. Okoye] to reconnect with the minor children."

**{¶47}** We note that in his second assignment of error, Mr. Okoye acknowledges that "much of the analysis in the above section [i.e., Assignment of Error One] applies." We will not repeat our discussion of the factors provided under R.C. 3109.04, and reiterate our conclusion that the trial court did not abuse its discretion in its consideration of those factors to determine the best interests of the children.

**{¶48}** Mr. Okoye provides us with no law in support of his assertion that the trial court should have appointed counsel for the children. We note that the case *In re Williams*, referenced in Ms. Okoye's brief, held "that pursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, ¶ 29. We decline to expand its holding beyond its stated parameters.

**{¶49}** While we recognize the restrictions placed upon Mr. Okoye's visitation with his children are impactful, we cannot say the trial court's decision was unreasonable, arbitrary, or unconscionable. We conclude the trial court did not err in granting only supervised visitation to Mr. Okoye.

**{¶50}** Mr. Okoye's second assignment of error is overruled.

ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN AWARDING SPOUSAL SUPPORT OF $1,254 PER MONTH FOR A PERIOD OF 37 MONTHS CONTRARY TO THE PROVISIONS OF [R.C.] 3105.18.

**{¶51}** In his third assignment of error, Mr. Okoye argues that the trial court erred in awarding spousal support in the amount of $1,254.00 per month, for a period of 37 months, contrary to the provisions of R.C. 3105.18. We disagree.

**{¶52}** We review a trial court's decision regarding spousal support for an abuse of discretion. *Barney v. Barney*, 9th Dist. Summit No. 26855, 2013–Ohio–5407, ¶ 11, quoting *Tufts v. Tufts*, 9th Dist. Summit No. 24871, 2010–Ohio–641, ¶ 7. An abuse of discretion implies the court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St .3d 619, 621 (1993).

**{¶53}** In this assignment of error, Mr. Okoye lists the factor provided for by R.C. 3105.18, but provides little in the way of argument to support his assertion that the trial court erred in awarding spousal support, nor does he cite to the applicable standard of review as required by Loc.R. 7(B)(7). Mr. Okoye also fails to provide us with a theory as to why the award is contrary to the provisions of R.C. 3105.18 as he contends, nor does he allege that the court failed to consider the factors listed under R.C. 3105.18.

**{¶54}** Mr. Okoye notes that Ms. Okoye earned $15,071.77 in 2014, and states: "To consider [Ms. Okoye]'s actual income level from 2014 suggest that she is not capable of full-time employment in any capacity, let alone at a capacity consummate with a person who has earned multiple degrees." He then suggests that the trial court was allowed to consider imputed income in calculating a support obligation. Mr. Okoye also states that his financial burden in paying for out-of-pocket expenses as they relate to supervised visitation should have been considered in determining an equitable award of support.

{¶55} Mr. Okoye goes on to contend that "the clear goal of the trial court was to achieve income equalization," and asserts that the equalization of income is not expressly mandated by the Ohio Revised Code and that an award of spousal support does not have to provide a beneficiary with a standard of living equivalent to that established during the marriage. He suggests that because Mr. Okoye had established his standard of living prior to the couples' marriage in 2001, "[t]he result of pure income equalization provides a benefit to [Ms. Okoye] based on circumstances that predated the marriage." Finally, Mr. Okoye states: "Income equalization also fails to account for the fact that [Ms. Okoye] has a greater financial upside as discussed previously," an argument that again goes to his theory of imputed income.

{¶56} "Unlike the child support statute, the spousal support statute does not direct the court to consider the 'potential income' of a spouse when considering the 'income of the parties, from all sources.'" *Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011–Ohio–2087, ¶ 16, quoting R.C. 3119.01(C)(5). "Instead, the court is directed to examine the relative earning ability of each party. The end result is not to arrive at a specific figure so as to 'impute' income; rather, the end result is to consider and weigh the spouses' relative earning abilities along with the other factors in arriving at reasonable spousal support both as to amount and term." *Id*. at ¶ 19.

{¶57} Although R.C. 3105.18 does not mandate income equalization or require an award that provides the parties with an equal standard of living, neither does it prohibit such an award. *See Stickney v. Stickney*, 9th Dist. Medina No. 14CA0099-M, 2016-Ohio-3379, ¶ 27 (stating that nothing in R.C. 3105.18 mandates that the trial court award a spouse equal income). Moreover, R.C. 3105.18(C)(1)(g) does require the trial court to consider "[t]he standard of living of the parties established during the marriage * * *."

{¶58} In the decree of divorce, the trial court states that it has considered all of the statutory factors under R.C. 3105.18, which includes a consideration of the relative earning abilities of the parties and the standard of living established during the marriage. The award of spousal support is further modifiable upon a showing of substantial change of circumstances by either party. As we have noted, Mr. Okoye does not allege the trial court failed to consider the statutory factors. The trial court was not required to impute income to Ms. Okoye, nor was it prohibited from providing the parties with an equal standard of living. We conclude the trial court did not abuse its discretion in awarding spousal support in the amount of $1,254.00 per month, for a period of 37 months.

{¶59} Mr. Okoye's third assignment of error is overruled.

ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT ERRED IN FINDING [] THE BALANCE OF DEFENDANT'S AMERIPRISE ACCOUNT TO BE MARITAL PROPERTY OR ALTERNATIVELY, THAT THE FUNDS OWED TO ADTU ARE A MARITAL DEBT.

{¶60} In his fourth assignment of error, Mr. Okoye argues the trial court erred in finding the balance of the Ameriprise account to be marital property and argues that the funds owed to ADTU should be considered a marital debt. We disagree.

{¶61} "R.C. 3105.171(B) provides that, in a divorce proceeding, the trial court must classify the parties' property as either marital property or separate property, after which it must divide the property equitably." *Fetzer v. Fetzer*, 9th Dist. Wayne No. 12CA0036, 2014–Ohio– 747, ¶ 22. Marital property includes all real and personal property owned by the parties that was acquired by either or both of them during the marriage. R.C. 3105.171(A)(3)(a)(i). Whether property is marital or separate "is a question of fact that this Court reviews under a civil manifest

weight standard." *Fetzer* at ¶ 21, quoting *Hahn v. Hahn*, 9th Dist. Medina No. 11CA0064–M, 2012–Ohio–2001, ¶ 20.

**{¶62}** "[B]efore an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice. Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002–Ohio–2320, ¶ 10. Manifest weight of the evidence pertains to the burden of persuasion. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, ¶ 19. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* 132 at ¶ 21.

**{¶63}** The trial court found there was financial misconduct by Mr. Okoye both before and after the filing of the case. The court noted that on October 1, 2012, Mr. Okoye's 401(k) account had a balance of $224,305.78, and that by December 31, 2012, he has transferred all but $21,920.30 to an Ameriprise account in his name only. The court further noted that Mr. Okoye did not list the account on his affidavit that was required to be filed at the initiation of the case. The trial court found that Mr. Okoye withdrew $70,530.00 from the Ameriprise account in violation of the mutual restraining orders of the trial court, and that Ms. Okoye had no knowledge of either the account or the withdrawals. The trial court further found:

> The Ameriprise account in [Mr. Okoye]'s name had a balance of $175,236.39 at trial. Defendant argued that this balance was not his but belonged to a Nigerian organization called ADTU. This court did not find defendant's testimony credible. The entire remaining balance of the Ameriprise account is marital property.

The trial court denied Mr. Okoye's request "that an ADTU debt in the amount of $168,850 should be paid from the Ameriprise Account," and found that the debt was not proven by a preponderance of the evidence to be marital debt.

{¶64} Mr. Okoye argues that the funds in the Ameriprise account were not marital property because he had previously pledged these funds to ADTU in consideration for loans he had previously received for medical expenses and for the adoption of the minor children. He also contends that the finding by the trial court that the debt was not proven by a preponderance of the evidence to be marital debt is inconsistent with the evidence presented.

{¶65} Although Mr. Okoye offered his own testimony as to the existence of a debt to ADTU, the trial court specifically found this testimony to be not credible. This Court recognizes that "the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010–Ohio–3296, ¶ 15. The trier of fact is free to believe all, part, or none of the testimony of a witness. *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 24. "The mere fact that testimony is uncontroverted does not necessarily require [a court] to accept the evidence if [it] found that the testimony was not credible." *Bradley v. Cage*, 9th Dist. Summit No. 20713, 2002 Ohio App. LEXIS 790, *4 (Feb. 27, 2002). "The trier of facts always has the duty, in the first instance, to weigh the evidence presented, and has the right to accept or reject it." *Ace Steel Baling, Inc. v. Porterfield*, 19 Ohio St.2d 137, 138 (1969). Because the trial court "[a]s the trier of fact is in the best position to assess matters of credibility, this Court is loath to disturb those determinations on appeal." *Wiseman v. Wiseman*, 9th Dist. Medina No. 13CA0009–M, 2014–Ohio–2002, ¶ 28.

{¶66} Accordingly, we conclude that the trial court did not lose its way or create a manifest miscarriage of justice when it found (1) Mr. Okoye's testimony was not credible as to a

debt owed to ADTU; (2) the balance of Mr. Okoye's Ameriprise account to be marital property, and (3) the funds owed to ADTU were not proven to be a marital debt. We therefore cannot say that the trial court's finding was against the manifest weight of the evidence. Mr. Okoye's fourth assignment of error is overruled.

## III.

{¶67} Mr. Okoye's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas Domestic Relations Division is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶68} I write separately to express my concern that the trial court did not follow the recommendation of the children's guardian ad litem to refer this case to juvenile court and/or Summit County Children Services Board because both parents had exhibited wholly inappropriate behavior around these children. The mental health and fitness of both parents was called into question by the guardian ad litem, who was trained and duty-bound to represent the children's best interest in a neutral and detached manner. *See* Sup.R. 48. Even the trial judge noted concern about both parents' inappropriate behavior and potential mental health issues.

{¶69} The domestic relations court is best suited to resolve custody disputes involving at least one presumptively-fit parent. The fitness of both parents was reasonably called into question in this case. Intervention by a children services agency and the juvenile court, if deemed to have been warranted, would have provided procedural protections to safeguard the best interest of these children and the fundamental rights of both parents to raise them. *See, e.g.*, *In re S.N.*, 9th Dist. Summit No. 23571, 2007-Ohio-2196, ¶ 25. Neither parent would have had the ability to potentially abuse the children and/or to prevent them from having regular interaction with their other parent. Instead, through a case plan designed to address the specific needs of the family members, these parents likely would have had the opportunity to have at least supervised visitation with their children on a regular basis to maintain the parent-child bond. *See* R.C. 2151.412. Moreover, the ongoing interaction between the parents and children would have been facilitated and regularly monitored by an assigned caseworker. Necessary

counseling and other reunification services also would have been offered, which may have prevented some of the inappropriate behavior by these parents and potential emotional damage to these two children.

APPEARANCES:

ROBERT C. ALDRIDGE, Attorney at Law, for Appellant.

TODD ANTHONY MAZZOLA and SARAH E. HEID, Attorneys at Law, for Appellee.